UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RODNEY BRANHAM,

    Plaintiff,

v.                                                             Case No. 2:04-cv-286
                                                             HON. GORDON J. QUIST
DONALD MANSFIELD, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Rodney Branham, an inmate currently confined at the Alger Maximum Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections (MDOC). Claims against several Defendants were dismissed upon initial screening. The remaining Defendants include Sherri Andrews, Barbara Bouchard, L. Hough and Donald Mansfield, all of whom are currently employed or were employed during the time at issue at the Alger Maximum Correctional Facility.

Plaintiff has filed a complaint, an amended complaint, and a supplemental complaint, alleging a number of constitutional violations. Several of Plaintiff's claims were dismissed by this Court on February 4, 2005 for failure to exhaust administrative remedies, and the remainder were dismissed for failure to state a claim. (*See* docket # 21.) On April 16, 2007, the Sixth Circuit Court of Appeals affirmed the dismissal of Plaintiff's claims for failure to state a claim and remanded the remainder of his claims pursuant to *Jones v. Bock*, 549 U.S. 199 (2007) (*see* docket # 37).

Within his amended and supplemental complaints, Plaintiff alleges that Defendants Andrews, Bouchard and Mansfield violated his First Amendment rights by refusing to mail legal mail to the U.S. courts and the Michigan Attorney General. Additionally, Plaintiff claims that Defendant Hough violated his constitutional right of access to the courts by not processing U.S. mail given to him on a Friday until the following Monday, thereby causing Plaintiff to miss a Michigan Court of Appeals' deadline. Plaintiff is seeking compensatory and punitive damages, as well as equitable relief.

Presently before the Court is the Defendants' Motion for Summary Judgment (docket # 63), pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response to this motion (docket # 67) and the matter is ready for decision. Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment

motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable

jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Defendants claim that they are entitled to summary judgment on Plaintiff's claims because Plaintiff failed to exhaust his available administrative remedies. Pursuant to the applicable portion of the Prison Litigation Reform Act (PRLA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003)[1], sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this

---

[1] The MDOC amended Policy Directive 03.02.130 on July 9, 2007. However, the 2003 version of the policy directive was in effect during the applicable time period.

complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ R, X. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due. *Id.* at ¶¶ R, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ FF. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ R, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ HH. The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ U. "The total grievance process from the point

of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id.*

In addition, the grievance policy provides that, where the grievance alleges staff brutality or corruption, the grievance may be submitted directly to Step III. *Id.* at ¶S. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.*

Defendants assert that Plaintiff failed to exhaust his administrative remedies with regard to his claims against them. A prisoner must specifically mention the involved parties in the grievance to make prison officials aware of the problems so that the prison has a chance to address the claims before they reach federal court. *Bell v. Konteh*, 450 F.3d 651, 653 (6th Cir. 2006); *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001); *accord Harbin-Bey v. Rutter*, 420 F.3d 571, 581 (6th Cir. 2005); *Burton v. Jones*, 321 F.2d 569, 574-75 (6th Cir. 2003); *Vandiver v. Martin*, No. 02-1338, 2002 WL 31166925, at *2 (6th Cir. Sept. 27, 2002) ("The issues [plaintiff] may raise, and the defendants he may name, in his lawsuit are limited to the specific issues raised, and the specific individuals mentioned, in his grievance."). Defendants claim that the only grievance Plaintiff filed concerning his legal mail was LMF-0411-3338-15b, which fails to list any of the Defendants. However, Defendants fail to provide any evidence, in the form of a list of all grievances filed by Plaintiff or an affidavit from the grievance coordinator, to support their conclusory assertion that Plaintiff did not file any other legal mail grievances. In addition, Plaintiff references other grievances that appear to be related to legal mail issues in his response to Defendants' motion. (*See* docket # 16, Plaintiff's exhibit Q2.) The undersigned concludes that a genuine issue of material fact remains as to whether other legal mail grievances were filed by Plaintiff that do name Defendants.

Consequently, Defendants are not entitled to summary judgment for Plaintiff's failure to exhaust his administrative remedies.

Within their brief filed in support of their motion for summary judgment, Defendants Mansfield, Andrews and Bouchard assert that Plaintiff has failed to state a claim against them. Specifically, they assert that Plaintiff has failed to state a claim by only referencing an unnamed grievance referring to his alleged inability to send mail to a state attorney general and someone in the U.S. District Court. This court addressed this issue in a previous opinion and found that these claims should not be dismissed for failure to state a claim. (*See* docket # 21, p. 17.) The undersigned does not find it necessary to revisit the issue. Therefore, in the opinion of the undersigned, Defendants Mansfield, Andrews and Bouchard are not entitled to dismissal of the complaint for Plaintiff's failure to state a claim.

Alternatively, Defendants Mansfield, Andrews and Bouchard argue that they are entitled to summary judgment on Plaintiff's access to the courts claims because Plaintiff did not suffer an actual injury. Specifically, Defendants state that Plaintiff has failed to show that his legal mail was being sent in relation to a direct appeal, a habeas petition, or a civil rights claim. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. An indigent prisoner's constitutional right to legal resources and materials is not, however, without

limit.  In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury."  *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1, 1999); *Knop v. Johnson*, 977 F.2d 996, 1000 (6th Cir. 1992); *Ryder v. Ochten*, No. 96-2043, 1997 WL 720482, *1-2 (6th Cir. Nov. 12, 1997).  In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim.  *Lewis*, 518 U.S. at 351-353; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

Further, in order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury."  *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999).  The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355.  "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only."  *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc).  Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).  As noted by Defendants, there is no evidence in the record showing that the alleged interference with Plaintiff's legal mail affected

a direct appeal, habeas corpus petition, or civil rights claim. Therefore, Defendants Mansfield, Andrews and Bouchard are entitled to summary judgment on Plaintiff's access to the courts claims.

Plaintiff also appears to argue that, with regard to Defendants Mansfield, Andrews and Bouchard, his First Amendment associational rights were violated by the alleged interference with his legal mail. The undersigned notes that the Sixth Circuit has not decided the degree to which prison inmates retain their freedom of association. *Long v. Norris*, 929 F.2d 1111, 1118 (6th Cir.), *cert. denied*, 502 U.S. 863 (1991). However, other courts have held that an inmate's right to send outgoing mail is not absolute, and that a prisoner has no more right to free postal service than does the ordinary citizen. *Corby v. Conboy*, 457 F.2d 251, 254 (2d Cir. 1972); *Williams v. Ward*, 404 F. Supp. 170, 172 (S.D. N.Y. 1975); *Chiarello v. Bohlinger*, 391 F. Supp. 1153, 1154 (S.D. N.Y. 1975), *aff'd*, 573 F.2d 1288 (1978). In addition, a court in the Eastern District of Michigan has held that "no right of freedom of association exists for prisoners." *Bazzetta v. McGinnis*, 902 F. Supp. 765, 770 (E.D. Mich. 1995), *aff'd*, 124 F.3d 774 (6th Cir. 1997), *supp. by*, 133 F.3d 382 (6th Cir. 1998), *cert. denied*, 524 U.S. 953 (1998). To support his allegation that his legal mail was not sent out to the U.S. District Court or the Michigan Attorney General, Plaintiff provides grievance LMF-0411-3338-15b and four disbursement authorization legal mail forms. The forms reference mail that Plaintiff attempted to send to the Michigan Attorney General and the U.S. District Court that was denied for insufficient funds on November 8, 2004, and November 15, 2004. (*See* docket # 1, Plaintiff's exhibits # 10-13.) As is noted in the prison's response to Plaintiff's grievance LMF-0411-3338-15b, "[a] review of the prisoner's file revealed that legal mail was sent to both parties named by the prisoner by disbursement on 11/19/04." (*See* docket # 63, Defendants' exhibit # 1.) In the opinion of the undersigned, any limited right of freedom of association that Plaintiff might retain

while incarcerated was not violated by a ten day delay in sending out Plaintiff's mail. Therefore, Defendants Mansfield, Andrews and Bouchard are entitled to summary judgment on this claim.

Defendant Hough asserts that Plaintiff failed to state a claim against him, since he was not mentioned in the body of Plaintiff's complaint or amended complaint. Defendant Hough is mentioned in Plaintiff's supplemental complaint, where he is alleged to have caused Plaintiff to miss a Michigan Court of Appeals' deadline by waiting until Monday to send out mail that Plaintiff had given to him on the previous Friday. Plaintiff argues that Defendant Hough therefore violated his right to access to the courts.

In his response to Defendants' motion for summary judgment, Plaintiff attaches the disbursement authorization form for expedited legal prisoner mail that was allegedly used for the mail being sent to the Michigan Court of Appeals. The document states, and Plaintiff does not refute, that the mail was submitted on Friday, June 6, 2003, at 3:45 p.m. (*See* docket # 67, Plaintiff's exhibit B.2.) The document then states that the mail was placed in outgoing mail on Monday, June 9, 2003 at 10:00 a.m. (*See id*.) The undersigned notes that proximate causation is an essential element of a § 1983 claim for damages. *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 659 (6th Cir.), *cert. denied*, 513 U.S. 873 (1994). It was unreasonable of plaintiff to expect that mail submitted at 3:45 p.m. would be sent out the same day. It appears that Plaintiff's delay in submitting his motion for mailing resulted in the motion being rejected as untimely by the Michigan Court of Appeals. Accordingly, in the opinion of the undersigned, Defendant Hough is entitled to summary judgment.

Defendants assert that they are entitled to qualified immunity with respect to each of Plaintiff's claims. Government officials, performing discretionary functions, generally are shielded

from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours

of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). For the above stated reasons, the undersigned concludes that Defendants have shown that no genuine issue of material fact exists as to whether

their conduct violated Plaintiff's constitutional rights. Therefore, in the opinion of the undersigned, Defendants are entitled to qualified immunity with regard to Plaintiff's claims against them.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' Motion for Summary Judgment. Accordingly, it is recommended that Defendants' Motion for Summary Judgment (docket #63) be granted and this case be dismissed in its entirety.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

      /s/ Timothy P. Greeley
     TIMOTHY P. GREELEY
     UNITED STATES MAGISTRATE JUDGE

Dated: August 5, 2009